UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CHARLES GILBREATH,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        No. 3:24-CV-507-JEM
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
        Defendant.                    )

**<u>MEMORANDUM OPINION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 8]. Now before the Court is Plaintiff's Brief in Support of a Social Security Appeal [Doc. 14]. Charles Gilbreath ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's request [**Doc. 14**] and **AFFIRM** the decision of the Commissioner.

I.      **PROCEDURAL HISTORY**

On October 3, 2021, Plaintiff filed for Disability Insurance Benefits [Tr. 165–67] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Plaintiff claimed a period of disability that began on September 1, 2021 [*Id.* at 165]. After his claim was denied initially [*id.* at 99–100] and upon reconsideration [*id.* at 103–06], Plaintiff requested a hearing before an ALJ [*id.* at 107–08]. A hearing was held on October 24, 2023, before ALJ Joyce Francis (hereinafter "ALJ Francis" or "the ALJ") [*Id.* at 37–65]. On December 19, 2023, ALJ Francis found Plaintiff not disabled [*Id.* at 14–36]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 7–11]. The

Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on December 30, 2024, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 14, 18, and 19].

## II.    DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

2

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since September 1, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis (MS); cervical spine degenerative changes; anxiety disorder; depression; and neurocognitive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

3

Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently balance as defined by the Selected Characteristics of Occupations in the Dictionary of Occupational Titles; can frequently stoop, kneel, and crouch; can occasionally crawl; can frequently be exposed to extreme heat and can frequently be exposed to unprotected heights or dangerous, moving machinery. He can understand, remember, and follow simple 1-to 2-step procedures; can sustain attention and concentration to complete simple tasks with regular breaks every 2 hours during an 8-hour workday; can interact as needed with supervisors and coworkers and can occasionally interact with the public; and can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 19, 1977 and was 43 years old which is defined as a younger individual age 18–49, on the alleged onset date (20 CFR 404.1563)

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2021, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 19–32].

4

### III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an

5

ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    ANALYSIS

Plaintiff argues that the ALJ failed to (1) adequately evaluate and sufficiently explain her consideration of the opinions of Larry Palmer, Ph.D. ("Dr. Palmer") and Kathryn Smith, Ph.D. ("Dr. Smith") [Doc. 14 pp. 14–23]; (2) properly evaluate Listing 11.09(B) [*id.* at 23–24]; and (3) properly evaluate Listing 5.08 [*id.* at 24–25].

For the reasons more fully explained below, the Court finds the ALJ adequately and sufficiently evaluated Dr. Palmer's and Dr. Smith's opinions and that she properly considered Listing 11.09(B) and Listing 5.08.

### A. Mental Assessments

Dr. Palmer and Dr. Smith performed mental assessments on April 6, 2022, and August 16, 2022, respectively [Tr. 550 & 558]. Plaintiff generally argues that the ALJ selectively chose the findings that were supportive of non-disability and ignored the evidence that supports his disability [Doc. 14 pp. 14–23]. He contends that the ALJ cherry-picked the record and failed to articulate the supportability and consistency factors [*Id.*].

In determining the appropriate RFC, the ALJ will consider "the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). When determining the persuasiveness of medical opinions and prior administrative medical findings, the most important factors the ALJ will consider are supportability and consistency. 20 C.F.R. § 404.1520c(a). In her discretion, she may consider other factors. 20 C.F.R. § 404.1520c(b)(3).

"Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician." *Jacqueline B. v. Comm'r of Soc. Sec.*, No. 2:25–CV–00295, 2025 WL 3280258, at *6 (S.D. Ohio Nov. 25, 2025) (citations omitted), *report and recommendation*, 2026 WL 332387 (S.D. Ohio Feb. 9, 2026). With respect to consistency, it "requires the ALJ to compare the report's conclusions to the evidence offered in other sources in the record." *Id.* at *7 (citations omitted). The ALJ must explain how she considered supportability and consistency. 20 C.F.R. § 404.1520(c)(b).

### 1. Dr. Palmer

Plaintiff argues that the ALJ declined to adopt the majority of Dr. Palmer's opinions [Doc. 14 p. 14]. He contends that "the ALJ's reasoning completely [and] selectively chooses through the record only findings supportive of nondisability, while ignoring significant findings of disability" [*Id.* at 15]. According to Plaintiff, "[T]he ALJ appears to have combed the report of

7

Dr. Palmer to selectively choose a few unremarkable findings, but this ignores the true nature of Dr. Palmer's examination" [*Id.* at 16]. The ALJ's errors, Plaintiff asserts, "are not harmless" [*Id.* at 19].

Defendant responds that the ALJ's decision is supported by substantial evidence [Doc. 18 p. 5]. He asserts that the ALJ discussed the consistency and supportability factors in her analysis [*Id.* at 6–8]. In addition, he argues that "the ALJ's mental RFC assessment was fully supported by her unchallenged analysis of the prior administrative findings by state agency psychological consultants Jenaan Khaleeli, Psy.D., and Douglas Robbins, Ph.D." [*Id.* at 6 (citations omitted)]. According to Defendant, "[T]he regulations provide for source-level articulation," which he argues the ALJ followed [*Id.* at 8].

Plaintiff replies that "Defendant argues that because the ALJ discussed the supportability and consistency of a portion of Dr. Palmer's opinion, the consistency analysis for understanding/remembering and concentration/persistence/pace was also provided" [Doc. 19 p. 1]. According to Plaintiff, "[T]his leads to the unjust scenario of the ALJ evaluating the supportability and consistency of only benign portions of the medical opinion, leaving absent any analysis of the portion of the opinion that is disabling" [*Id.* at 2]. He argues that "the ALJ needs to identify the conflicting evidence and explain why it did not support Dr. Palmer's opinion" [*Id.*]. In addition, he states that "[t]he ALJ needs to discuss both sides of the evidence and offer a logical rationale as to why certain evidence was credited over other evidence" [*Id.* at 3 (citations omitted)].

Plaintiff saw Dr. Palmer on April 6, 2022, for a psychological evaluation [Tr. 550]. He opined that Plaintiff had marked limitations in understanding/remembering and concentration/persistence/pace; moderate limitations in social interaction; and moderate to marked

8

limitations in adaptability [*Id.* at 561]. The ALJ found that Dr. Palmer's opinion was "somewhat persuasive" [*Id.* at 29].

Plaintiff accuses the ALJ of cherry-picking Dr. Palmer's evaluation. "In assessing a claimant's RFC, 'an ALJ may not selectively include only those portions of the medical evidence that places a claimant in a capable light, and fail to acknowledge evidence that potentially supports a finding of disability' such that [she] 'cherry-picked' the record." *Mann v. Kijakazi*, No. 2:22-CV-55, 2023 WL 3276472, at *8 (E.D. Tenn. May 5, 2023) (quoting *Davidson v. Berryhill*, No. 16-cv-2521, 2017 WL 4682343, at *17 (N.D. Ohio Oct. 18, 2017) (collecting cases)). Even so, the Sixth Circuit has noted that an allegation of cherry-picking "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (citation omitted). The Court does not find that the ALJ cherry-picked the evidence for the reasons explained below.

Plaintiff argues that with respect to understanding/remembering, "the ALJ ignores . . . significant findings showing deficits in understanding/remembering" [Doc. 14 p. 16]. He states that Dr. Palmer found that "he did not know the year or the number of states[,]" he could "not remember a major news story of the week[,]" he could not make several mathematical calculations, and he "was not able to do serials 7s, nor could he follow three commands or spell [']world['] backward" [*Id.*]. "An ALJ need not discuss every piece of evidence in the record for [her] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020) ("The ALJ's decision may stand even though [s]he did not expressly reference every piece of evidence in the record."); *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

9

The ALJ, however, observed that during Dr. Palmer's evaluation, Plaintiff "was unable to complete serial sevens or spell [']world['] backward" [Tr. 25]. She also noted that Plaintiff "repeated 4 digits forward and 3 digits backward, he recalled 1 out of 3 previously named words after a 5-minute delay, and he completed simple addition and subtraction problems" [*Id.* at 25–26]. Contrary to Plaintiff's assertion, the ALJ did not ignore the evidence.

With respect to the ALJ's supportability analysis, the ALJ observed that Dr. Palmer opined that Plaintiff had marked limitations in understanding/remembering and concentration/persistence/pace [*Id*. at 29]. She found that his opinion was not consistent with or supported by the overall evidence [*Id*.]. While the ALJ noted that according to Dr. Palmer, Plaintiff "at times appeared to have difficulty maintaining focus and staying on task and that he was slow to respond and asked for questions to be repeated" [*id*. at 25], she explained that "Dr. Palmer stated that the [Plaintiff] was an adequate historian with fair long-term memory and that he had fair ability to comprehend questions and provide answers" [*id.* at 29]. In addition, the ALJ noted that according to Dr. Palmer, Plaintiff's "reasoning, problem solving, and planning skills were average and that his abstract reasoning and critical thinking skills were average" [*Id.*].[1]

---

[1]     Plaintiff argues that the "ALJ appears to have grouped her analysis of understanding/remembering with concentration/persistence/pace" [Doc. 14 p. 17]. But he does not provide any authority for why this was an error. But regardless, Dr. Palmer defined "concentration persistence, and pace" as "[t]he ability to make decisions, remember and carry out instructions, maintain schedules and attendance, sustain concentration and persist during a workday or workweek without interruption from psychological symptoms" [Tr. 561]. The ALJ noted that Plaintiff's "reasoning, problem solving, and planning skills were average and that his abstract reasoning and critical thinking skills were average" [*Id.* at 29]. She also stated that according to Dr. Palmer, Plaintiff "had average ability to manage personal and home tasks skills as well as time and schedules" [*Id.*].

Plaintiff also states that the ALJ did not discuss supportability and consistency for other parts of Dr. Palmer's opinion [Doc. 14 pp. 16–19]. But as Defendant notes, "[T]he regulations provide for source-level articulation, meaning the ALJ considers a source's opinion together in a

10

Plaintiff asserts that the ALJ ignored "Dr. Palmer's extensive supporting explanation surrounding adaption" [Doc. 14 p. 17]. For instance, Plaintiff claims that the ALJ ignored Dr. Palmer's findings that he "responds in conversation slower than average; has below average reading, writing, and math skills; below average long-term and short term memory; and cannot manage money and financial responsibilities; and he 'is able to perform some daily responsibilities but currently not work tasks'" [*Id.*]. The ALJ is not required to reference all the evidence. *Thacker*, 99 F. App'x at 665; *Rottmann*, 817 F. App'x at 196; *Loral Def. Sys.-Akron*, 200 F.3d at 453. Even so, the ALJ did discuss several of Dr. Palmer's adaptability observations, noting that Plaintiff was "slow to respond and asked for questions to be repeated" [Tr. 26; *see also id.* at 31], and he could complete "simple additional and subtraction problems" [*Id.* at 26].

But the ALJ stated that "[Plaintiff] had average life-management skills and that he had average ability to manage personal and home task skills as well as time and schedules" [*Id.* at 29]. The ALJ also noted, "During the examination with Dr. Palmer, the [Plaintiff] stated that he cared for his personal hygiene without assistance; that he prepared simple meals like sandwiches; and that he did chores like washing dishes, sweeping, and doing laundry" [*Id.*]. The ALJ further asserted that Plaintiff testified at the hearing "that he drove his children to school in the mornings; that he prepared simple meals; and that he did chores like sweeping and taking out the trash" [*Id.*].[2]

---

single analysis and need not discuss supportability and consistency for each opined limitation within the opinion" [Doc. 18 p. 8 (citing 20 C.F.R. § 416.920c(b)(1))].

[2]     Plaintiff contends that while "the ALJ does point to some daily activities for her consistencies analysis[,]" he "testified he does not do laundry, shop for groceries, or yardwork but can sweep and take a break and do dishes" [Doc. 14 p. 18 (citation omitted)]. Plaintiff points to his functional report, noting that it shows difficulty taking care of himself and doing house chores and that the ALJ ignored this evidence [*Id.* at 19]. But the ALJ considered his chores, noting that he "did chores like sweeping and taking out the trash" [*Id*. at 29]. And with respect to his personal hygiene, the ALJ discussed that too [*Id*. at 33 ("During the examination with Dr. Palmer, the [Plaintiff] stated that he cared for his personal hygiene without assistance[.]")]. *Cf. Sunshine K. v.*

In summary, the ALJ found Dr. Palmer's conclusions inconsistent with his own observations of Plaintiff during the assessment, thereby appropriately considering the supportability factor.

Turning to the consistency factor, the ALJ reasoned that "[t]he state agency psychological consultants at the initial and reconsideration level found that [Plaintiff] had moderate limitations in all four of the paragraph B criteria" [*Id.* at 30]. Indeed, Jenaan Khaleeli, Psy.D., and Douglas Robbins, Ph.D., evaluated Plaintiff in April 2022 and March 2023, respectively [Tr. 70–71, 76–78, 84–86, 90–92]. Dr. Khaleeli opined that Plaintiff's ability to understand was not significantly limited, except that his ability to understand and remember detailed instructions was moderately limited [Tr. 76]. Further, with respect to Plaintiff's ability to sustain concentration, Dr. Khaleeli stated that Plaintiff only showed moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, and perform at a consistent pace [*Id.* at 76–77]. With respect to adaptation limitations, Dr. Khaleeli opined that Plaintiff was not significantly limited, except that he had moderate limitations with responding appropriate to changes in the work setting [*Id.* at 77].

As noted by Defendant, "Dr. Robbins found Plaintiff more restricted mentally, to understanding, remembering, and following simple one- to two-step procedures; maintaining attention/concentration for two-hour periods to complete simple tasks; tolerating infrequent/causal interactions with the public; and tolerating infrequent and gradually introduced changes in the work setting" [Doc. 18 p. 6 (citing Tr. 90–92)]. The ALJ credited Dr. Robbins's more restrictive findings [*See* Tr. 24]. Further, the ALJ noted that Plaintiff could do some chores, drive his children

*Comm'r of Soc. Sec.*, No. 3:23-CV-00582, 2025 WL 903838, at *7 (W.D. Ky. Mar. 25, 2025) ("Claimant argued in her brief that the ALJ erred by not discussing her daily activities. The Court agrees. The ALJ did not reference Claimant's daily activities at all in his discussion of her RFC.").

12

to school, prepare simple meals, and take care of his personal hygiene [*Id.* at 29]. The ALJ therefore properly considered the consistency factor.

The Court finds that the ALJ did not cherry pick the record in finding Plaintiff was not disabled. Indeed, the ALJ merely weighed Dr. Palmer's evaluation to determine whether it was consistent and supported by the evidence in the record. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

### 2. Dr. Smith

Plaintiff contends that the ALJ's explanation for not accepting Dr. Smith's opinion "falls short in the supportability analysis" and that it "selectively chooses through the examination ignoring the significant positive findings Dr. Smith made" [Doc. 14 p. 20]. He argues that "[i]n her consistency analysis surrounding Dr. Smith's opinions, the ALJ points to Dr. Palmer's examination[,]" which he argues is "highly probative of disability" [*Id.* at 21]. Plaintiff states, "[B]oth Dr. Smith and Dr. Palmer's opinions are highly consistent with the other medical evidence of record, which the ALJ largely ignores" [*Id.* at 22].

Defendant responds that the ALJ considered the supportability and consistency of Dr. Smith's opinion [Doc. 18 pp. 8–9]. Defendant states that the ALJ reviewed Dr. Palmer's observations, Plaintiff's testimony, and Dr. Smith's observations that his low processing speed scores were likely due to his physical impairments and not his cognitive ability [*Id.* at 8–9]. He contends that "the ALJ reasonably found the moderate limitations in Dr. Smith's opinion supported by the doctor's own examination and consistent with other evidence, including Dr. Palmer's examination" [*Id.* at 9 (citation omitted]. Defendant denies that the ALJ cherry-picked the evidence

and notes that Plaintiff's "mere disagreement with the ALJ's conclusions does not warrant remand" [*Id.* (citation omitted)].

Plaintiff replies that "Defendant has not explained why the fact there is some physical component to Plaintiff's processing speed in any way invalidates the results obtained" [Doc. 19 p. 4]. "[He] maintains the fact there is some physical component that impacted the results does not render the results invalid, it would still be how Plaintiff performs in real life" [*Id.*].

Dr. Smith evaluated Plaintiff on August 16, 2022 [Tr. 558]. She found: (1) "[his] ability to understand, remember, and carry out simple instructions is mildly to moderately limited[,]" (2) "[his] ability for complex instructions is moderately to markedly limited[,]" (3) "[his] [a]bility to make simple judgments is mildly limited[,]" (4) "[his] ability for complex judgments is moderately limited[,]" (5) "[his] ability to sustain concentration and persist is moderately to markedly limited[,]" (6) "[his] ability to interact appropriately with others is moderately limited[,]" and (7) "[his] ability to adapt to changes and requirements is moderately to markedly limited" [*Id.* at 593]. The ALJ found Dr. Smith's opinion "not entirely consistent with the overall evidence" [*Id.* at 29].

Plaintiff claims that the ALJ "ignore[ed] positive findings Dr. Smith made" [Doc. 14 p. 20]. The ALJ need not reference all the medical evidence. *Thacker*, 99 F. App'x at 665; *Rottmann*, 817 F. App'x at 196; *Loral Def. Sys.-Akron*, 200 F.3d at 453. Even so, the ALJ did summarize Dr. Smith's opinion [Tr. 26]. The ALJ observed that Plaintiff was able to "complete[] serial threes and serial fives but not serial sevens" [*Id.*]. She noted that Plaintiff "spelled [']world['] forward but could not spell it backward" [*Id.*]. In addition, the ALJ stated that Plaintiff scored a 79 on the full-scale IQ test [*Id.*]. The ALJ further explained, "While his processing speed was very low, Dr. Smith concluded that this was at least in part related to [Plaintiff's] motor impairment and

14

not his cognition" [*Id.*]. The ALJ also stated that according to Dr. Smith, Plaintiff's "delayed memory was his greater weakness, but that sadness may have interfered with his performance on the memory scale test" [*Id.*]. The ALJ therefore did not ignore this evidence.

Plaintiff contends that the ALJ's supportability and consistency analysis falls short. Starting with supportability, the ALJ found that Dr. Smith's moderate to marked limitations in concentration and persistence and in adapting were not supported by Dr. Smith's exam [*Id.* at 29]. The ALJ reasoned that "[w]hile the [Plaintiff] was a bit slow and took his time during IQ testing, Dr. Smith noted that the [Plaintiff] got credit for many items" [*Id.*]. She also stated that Dr. Smith observed that Plaintiff's "low processing speed scores could have been related to his motor impairment with his left arm rather than slow cognitive functioning" [*Id.*]. The ALJ conducted a proper supportability analysis.[3]

With respect to consistency, the ALJ summarized how Plaintiff presented to Dr. Palmer— that is, Plaintiff "had fair ability to comprehend questions and provide answers" [*Id.*]. She also reasoned that Plaintiff had no more than moderate limitations in light of his testimony at the hearing that "he drove his children to school in the morning; that he prepared simple meals and that he did chores like sweeping and taking out the trash" [*Id.*]. And further, the ALJ found "the state agency psychological consultants' findings are persuasive" [*Id.* at 30]. The Court finds that the ALJ evaluated Dr. Smith's opinion for consistency.

---

3  Specifically, Dr. Smith noted, "The processing speed subtests on the WAIS and the Trails A & B are believed to be an underestimate of ability due to the impact of deficient motor skill functioning" [Tr. 588]. Plaintiff argues that regardless if there was "some physical component that impacted the results," this "does not render the results invalid" [Doc. 19 p. 4]. The ALJ, however, was specifically discussing Plaintiff's cognitive abilities [*see* Tr. 29] because Dr. Smith opined that his score does not accurately "reflect[] his cognition" [*Id.* at 591].

Plaintiff asserts that "both Dr. Smith and Dr. Palmer's opinions are highly consistent with the other medical evidence of record which the ALJ largely ignores[,]" and he summarizes the evidence that the ALJ allegedly ignored [Doc. 14 p. 22]. The ALJ, however, pointed out that Plaintiff reported fatigue but that Adderall had some benefit [Tr. 24], he reported cognitive problems [*id.*], he reported improvement with his fatigue in July 2023 [*id.* at 25], he experienced difficulty with short-term recall [*id.*], and that a treatment provider stated "it would be difficult for the [Plaintiff] to maintain gainful employment" [*Id.* at 30 (citation omitted)]. The ALJ did not ignore this evidence.

The Court finds therefore finds Plaintiff's objections not well taken.

**B.      Listing 11.09(B)**

Plaintiff states that "Listing 11.09(B) first requires a marked limitation in physical functioning defined by 11.02(G)(2)" [Doc. 14 p. 23 (footnote omitted)]. He summarizes the evidence, noting that it established "a marked limitation in physical functioning[,]" which "the ALJ never evaluated" [*Id.* at 24]. He states that it also "requires a marked limitation in one of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself[,]" which he contends exists in light of Dr. Palmer's and Dr. Smith's opinions [*Id.*].

Defendant responds that "[t]he ALJ explained in detail that Plaintiff had no more than moderate limitations in the four areas of mental functioning" and that 'the ALJ also found that he did not show a marked limitation in physical functioning" [Doc. 18 pp. 3–4].

The ALJ considered whether Plaintiff met Listing 11.09(b) [Tr. 21]. The ALJ noted that in June 2019, Plaintiff was diagnosed with MS [*Id.* at 24]. She explained that following that MRI, the results of other "MRIs were stable with no new lesions or active lesions" [*Id.*]. The ALJ noted

that the medical records showed that "[h]e exhibited a normal gait, he held both arms up for 10 seconds without drift, and he was able to stand without difficulty" [*Id.* at 24–25].

In June 2022, the ALJ stated, Plaintiff's MS was not in relapse or progression and that "his dysesthesias improved with medication" [*Id.* at 25]. Upon that exam, Plaintiff also had a normal gait [*Id.*]. In addition, Plaintiff had a consultative examination with Dr. Uzzle in June 2022, which the ALJ considered [*Id.*]. During that visit, Plaintiff stated that "he was independent in his activities of daily living," "had a driver's license and that he drove[,]" and that "[h]e used no handheld assistive device" [*Id.*]. While Plaintiff exhibited an awkward gait, "Dr. Uzzle noted that the [Plaintiff] gave limited effort and that it was difficult to assess his ability to the toe walk, heel walk, deep knee, bend and tandem walk" [*Id.*]. According to the ALJ, "[Plaintiff] exhibited normal deep tendon reflexes, normal sensation, and normal muscle strength in both of his upper and lower extremities along with normal grip strength" [*Id.*]. The ALJ also observed that he "exhibited normal range of motion in his spine and in all other joint areas" [*Id.* (citations omitted)].

Moreover, the ALJ stated that in December 2022, Plaintiff did not have a relapse or progression of his MS and that he exhibited a normal gait [*Id.*]. The ALJ also summarized Plaintiff's treatment in July 2023, noting that while he reported issues with dysesthesia, Plaintiff was alert and oriented, "good power in his upper extremities[,] and only mild weakness in his lower extremities" [*Id.*]. Plaintiff reported having "a cane at home but that he did not really use [it]" [*Id.*]. At this appointment, the ALJ observed that Plaintiff had "an unsteady gait and was slow to rise[,]" but the medical provider noted that those "could be related to the medication," which the medical provider instructed him to decrease [*Id.*]. The ALJ stated that there were no other treatment records following his treatment in July 2023 [*Id.*].

Plaintiff points to medical records that purportedly supports a finding of disability [*See* Doc. 14 pp. 23–24]. The ALJ considered these records [*See* Tr. 23–30]. "[And] the ALJ explained how, rather than serious limitations, the record supported an ability to perform a range of light exertional work with some postural and environmental limitations, but no manipulative limitations, on a regular and continuing basis" [Doc. 18 p. 4 (citing Tr. 23–30)]. Plaintiff's argument is in effect asking the Court to reweigh the evidence, which the Court cannot do. *Rottmann*, 817 F. App'x at 196.[4]

### C.       Listing 5.08

Plaintiff argues that the ALJ failed to properly evaluate Listing 5.08 [Doc. 14 p. 24]. He contends that "Listing 5.08 requires weight loss due to any digestive disorder despite adherence to prescribed treatment, with a BMI of less than 17.50 calculated on at least two evaluations 60 days apart within a consecutive 12-month period" [*Id.*]. He states that his "neurological disorder led to weight loss, thus, Plaintiff's weight loss should have been evaluated under the rules for digestive disorders" [*Id.* at 25].

Defendant responds that "Plaintiff's claim of error is without merit" [Doc. 18 p. 2]. He asserts that "Plaintiff does not challenge the ALJ's finding that he does not have a medically determinable digestive disorder" [*Id.*]. Defendant therefore argues that "the ALJ evaluated Plaintiff's neurological impairment under listing 11.00, the listing for neurological impairments" [*Id.* (citation omitted)].

The parties agree that Listing 5.08 requires weight loss due to any digestive disorder despite continuing treatment as prescribed [*See* Doc. 14 p. 24; Doc. 18 p. 3]. The ALJ found that Listing

---

[4]       Plaintiff also argues that he has marked limitations in mental functioning, relying on his arguments about Dr. Palmer's and Dr. Smith's opinions. Given the findings above, the Court need not address this argument.

5.08 was for "weight loss due to any digestive disorder" [Tr. 21]. She stated that Plaintiff's weight loss does not appear to be from a digestive disorder[,]" and therefore, found listing 5.08 inapplicable" [*Id.*]. "Assuming that [L]isting 5.08 is applicable," the ALJ found that he did not meet the criteria given his "body mass index [was] above that required by the [L]isting" [*Id.*].

Plaintiff does not challenge the ALJ's finding that he does not have a digestive disorder, nor does he argue that he has a digestive order [*See* Doc. 14 pp. 24–25]. As Defendant notes, "The digestive disorder must be established as a medically determinable impairment through clinical and laboratory findings" [Doc. 18 p. 3 (citation omitted)]. Indeed, "weight loss caused by impairments other than digestive disorders are evaluated under the appropriate body system for that impairment" [*Id.*]. And here, "the ALJ evaluated Plaintiff's neurological impairment under listing 11.00 the listing for neurological impairments" [*Id.* (citations omitted)]. The ALJ did not err.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's request to award benefits or to remand [**Doc. 14**] and **AFFIRMS** the decision of the Commissioner.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

19